## No. 13,825.

FIRST MORTGAGE SECURITIES COMPANY ET AL. *v.* FADER.

(64 P. [2d] 1278)

Decided January 25, 1937.   Rehearing denied February 15, 1937.

Mr. HARRY C. RIDDLE, for plaintiffs in error.

Mr. GEORGE A. EPPERSON, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS action to quiet title was brought by defendant in error in the district court of Yuma county, Colorado, October 10, 1934, and a judgment and decree entered in his favor June 22, 1935. To reverse this judgment, a writ of error is prosecuted. Since two judgments are involved, to avoid confusion, a brief recital of the entire controversy is desirable.

As gathered from the pleadings herein, it appears that some years prior to October, 1926, the Platte Valley Loan and Investment Company, a corporation composed of W. H. Ferguson and others, as indorser, was indebted to the United States National Bank of Denver in the sum of approximately $100,000, which indebtedness was covered by an indemnity guaranty in the sum of $150,000 given by Ferguson and others. While so indebted, and during the life of the guaranty, W. H. Ferguson on October 23, 1926, executed a quitclaim deed to Ferguson and Company, a firm composed of W. H. Ferguson and others, for any and all property he then owned in Yuma county, Colorado; that thereafter and during the existence of the indebtedness above mentioned, on December 12, 1932, Ferguson and Company, by W. H. Ferguson as president, executed and delivered a quitclaim deed for practically all of the property conveyed as mentioned above, to Herbert E. Fader, an employee of Ferguson and Company and W. H. Ferguson in the offices of said company, and of Ferguson at Lincoln, Nebraska, Fader, as it is alleged, having full knowledge of the indebtedness herein mentioned.

To cover a balance of the remaining indebtedness, the Platte Valley Company executed and delivered its promissory note endorsed by R. L. and W. H. Ferguson to the United States National Bank which assigned the note to the First Mortgage Securities Company. The company filed suit on this note in the district court of the City and County of Denver against the maker and endorsers and as an aider attached the land in Yuma county hereinbefore mentioned as having been conveyed to Fader. Fader

was not a maker or endorser of the note involved and was not made a party to the action. Notice and a copy of the writ of attachment were filed in the recorder's office of Yuma county, and a copy of the summons and complaint together with the notice and a copy of the writ of attachment were personally served upon defendants in Lancaster county, Nebraska, by the sheriff of that county. No appearance being made, default was entered against all defendants and judgment entered thereon in the sum of $10,403.05 together with costs. Execution issued and the sheriff of Yuma county was directed to levy upon the lands above mentioned. After advertisement pursuant to statute, the property was sold by the sheriff on the 5th day of June, 1934, to the First Mortgage Securities Company, the highest bidder, which company received the certificate of purchase, a duplicate of which was filed with the clerk and recorder of Yuma county June 8, 1934, and under which the company would be entitled to a deed December 6, 1934, unless redemption was had.

October 10, 1934, Fader, defendant in error, filed suit in the district court of Yuma county, against the First Mortgage Securities Company and Van Horn as sheriff, to quiet title to the lands conveyed to him by Ferguson. In his complaint, he set forth in general the facts above related upon which the mortgage company as defendant claimed the land by virtue of the attachment proceedings.

In their answer, the defendants, now plaintiffs in error, pleaded two separate defenses, and a third defense consisting of a counterclaim, in all of which they denied that Fader was the owner in fee simple by registered certificate of title or otherwise and denied that he had ever been at any time a bona fide purchaser and owner and further that the attachment proceedings cast any cloud upon any title that he had. In the answer, it was further alleged that the district court of Yuma county was without jurisdiction because, under the allegations of the complaint, plaintiff was attempting to make a collateral attack upon the judgment in the attachment proceedings, to which

Fader was not a party. In a further defense and counter-claim it was alleged that Ferguson executed the quitclaim deed hereinbefore mentioned to Ferguson and Company, and that thereafter Ferguson and Company, by W. H. Ferguson, executed the deed to Fader, all of which was with intent to hinder, delay and defraud creditors, particularly the United States National Bank and the First Mortgage Securities Company, which intent and purpose were well known to, and acquiesced in by, Fader. It was further alleged that the deed to Fader did not convey a bona fide title, and that in accepting the conveyance from Ferguson, Fader acted for and in behalf of the Platte Valley Loan and' Investment Company and the Fergusons, in a plan or scheme to hinder, delay and defraud creditors, and defendants prayed that Fader's complaint be dismissed and the conveyance from Ferguson and Company to Fader be set aside.

Fader demurred to the first, second and third defenses set up in the answer, and particularly to the third defense and counterclaim, on the ground that the cause of action alleged in the latter was barred by sections 6403 and 6404, C. L. '21. These demurrers were sustained and defendants filed an amended answer which, on motion of plaintiff, was stricken. Default entered which was followed by judgment on the pleadings in favor of Fader quieting his title to the lands described in his complaint.

█ The case rests upon a determination of the correctness of the court's ruling on the pleadings. If defendants stated a cause of action in their counterclaim, not barred by the statute of limitations, then the court was in error. When fraud is alleged, as in the answer before us, many matters that otherwise are legal obstructions disappear, and we believe such a situation here exists. If defendants are able to establish by competent evidence their allegations of fraud, they should prevail and the law will so permit.

██ It is contended by defendants that plaintiff by this action to quiet title, made a collateral attack upon the

judgment under which they, through attachment, acquired title by the sheriff's deed, and that such judgment is not open to attack or impeachment in a collateral proceeding. Under the unusual circumstances of the case and the condition of the pleadings, the question as to whether or not this is a collateral or a direct attack, is not important since it is necessary to discuss the nature of the judgment before it can be determined whether defendants have any right to proceed affirmatively at all. We are required to go no further than to say that from the pleadings it appears that the court obtained jurisdiction in the attachment action and its judgment therein carries every presumption of regularity; and that while Fader, the registered title owner of the attached land, was not a party to that action, it does not avail him present refuge if the land attached was the property of a defendant or defendants in the attachment proceeding who fraudulently conveyed to Fader to hinder and delay or defraud the attaching creditor. If fraud tainted the conveyance between Ferguson the defendant debtor, and Fader, then, so far as an attaching judgment creditor is concerned, the property remains subject to the attachment as much as though the fraudulent deed never had been executed, and the question of whether it was a registered title under the Torrens Act or not is of no consequence. If the allegations of defendants' answer and counterclaim are true, then the conveyances from Ferguson and finally to Fader are void as to creditors, if they were prejudiced thereby, and so declared by sections 5100, 5116, C. L. 1921; being void, they have no legal force as to them. This would be true even if the conveyance to Fader was a voluntary one without knowledge on his part of the intent of the grantor; however, the answer alleges he did have knowledge and participated in the furtherance of the scheme of his grantor to defraud, therefore, all questions, that have become confusing herein, with reference to the matter of the failure of the plaintiff in the attachment proceedings to comply with all the regulations of the Torrens Act,

which relates to the registration of titles, such as Fader is alleged to have, are of no consequence, because, if the conveyance to him was void, it makes no difference in what manner he attempted to hold the title.

Fader raises the question of the statute of limitations and seeks to have its application enforced against the cause of action set up in defendants' answer and counterclaim, wherein it is sought to cancel and set aside the deed to Fader as a cloud upon the title obtained by the attaching creditor upon the sheriff's deed. He supports this contention by alleging that defendant had knowledge of the existence of the alleged fraud for a greater time than the periods of limitation mentioned in sections 6403 and 6404, C. L. 1921, upon which he relies. These sections are as follows:

"6403. * * * Bills for relief, on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards."

"6404. * * * Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after."

One conveyance complained of was dated December 12, 1932. We are not advised as to who constituted Ferguson and Company. For aught we know, W. H. Ferguson, on said date, controlled this land. If these statutes applied, still, this claim was within the three-year period.

The trial court erroneously sustained the general and special demurrers to the answer and counterclaim and motion to strike, and upon such erroneous ruling, entered the judgment now sought to be reversed.

The judgment is reversed and the cause remanded with directions to the district court to vacate and set aside all of its orders, judgments and decrees in this case, to enter an order requiring the plaintiff Fader to reply to the several answers and counterclaim, and for such other pro-

ceedings as may be consistent with the views herein expressed.